**No. 25-60263**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**Cheryl Roberts and William Chambers,**

Plaintiffs - Appellees

**v.**

**KJ Win, Incorporated,**

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi, Northern Division
Civil Action No. 3:23-cv-2999-KHJ-MTP

## BRIEF OF APPELLANT KJ WIN, INCORPORATED
## ORAL ARGUMENT REQUESTED

Scott Ellzey, MS Bar No. 10435
Drury S. Holland, MS Bar No. 104371
John P. McMackin, MS Bar No. 105967
PHELPS DUNBAR LLP
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: (228) 679-1130
Facsimile: (228) 679-1131
Email: scott.ellzey@phelps.com
Email: dru.holland@phelps.com
Email: john.mcmackin@phelps.com

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Cheryl Roberts, Plaintiff-Appellee;

2. William Chambers, Plaintiff-Appellee;

3. KJ Win, Inc., Defendant-Appellant, California Secretary of State records indicate there are no parent corporations or publicly held corporations owning 10% or more of KJ Win, Inc.'s stock;

4. Courtney Wilson, Tynes Law Firm, P.A., Attorney for Plaintiffs-Appellees;

5. Scott Ellzey, Drury S. Holland, John P. McMackin, and Phelps Dunbar LLP, Attorneys for Defendant-Appellant;

6. Prime Insurance Company;

7. Honorable Kristi H. Johnson, District Judge, United States District Court for the Southern District of Mississippi; and

8. Honorable Michael T. Parker, Magistrate Judge, United States District Court for the Southern District of Mississippi.

SO CERTIFIED, this the 15th day of September 2025.

*/s/ Scott Ellzey*
Attorney for Appellant

i

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is appropriate in this case to explore the impact of the default judgment and propriety of Rule 60(b) relief in the light of KJ Win never being served.

PD.53427013.1

# TABLE OF CONTENTS

**Page**

Certificate of Interested Parties.................................................................i

Statement Regarding Oral Argument ........................................................ ii

Table of Contents ................................................................................ iii

Table of Authorities .............................................................................v

Jurisdictional Statement .........................................................................1

Statement of the Issues..........................................................................2

Statement of the Case............................................................................3

Summary of the Argument......................................................................7

Argument............................................................................................8

    I.     The District Court lacked jurisdiction and its judgment was premised on a violation of due process that deprived KJ Win of notice and the opportunity to be heard.................................10

          A. The District Court did not have personal jurisdiction.........................10

          B. KJ Win's lack of service also violated due process. ..........................12

    II.    The District Court's decision to find KJ Win willfully defaulted—and so reject every meritorious defense KJ Win had—was an unfortunate abuse of discretion. ........................14

          A. KJ Win is not in default, let alone willful default..............................14

          B. The only prejudice that Chambers and Roberts have identified is that they have been unable to locate the manager/members of KJ Win..............................................15

          C. KJ Win has a number of meritorious defenses. .................................16

          D. The District Court's decision to ignore these factors was an abuse of discretion..........................................................19

iii

Conclusion ........................................................................................................22

Certificate of Service ......................................................................................23

Certificate of Compliance ...............................................................................24

iv

# TABLE OF AUTHORITIES

**Pages(s)**

**United States Supreme Court Cases**

*Gonzalez v. Crosby*
   545 U.S. 524 (2005)............................................................................9

*Jones v. Flowers*
   547 U.S. 220 (2006)..........................................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*
   339 U.S. 306 (1950)..........................................................................12

*Omni Cap. Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*
   484 U.S. 97 (1987)............................................................................10

*United Student Aid Funds, Inc. v. Espinosa*
   559 U.S. 260 (2010)...................................................................10 & 12

*Waetzig v. Halliburton Energy Servs., Inc.*
   604 U.S. 305 (2025)............................................................................9

**Fifth Circuit Cases**

*Blois v. Friday*
   612 F.2d 938 (5th Cir. 1980) ............................................................15

*Broad. Music, Inc. v. M.T.S. Ent., Inc.*
   811 F.2d 278 (5th Cir. 1987) ............................................................14

*Callon Petroleum Co. v. Frontier Ins. Co.*
   351 F.3d 204 (5th Cir. 2003) ....................................................8, 10, 13

*Carter v. Fenner*
   136 F.3d 1000 (5th Cir. 1998) ............................................................8

*Ditech Fin., L.L.C. v. Naumann*
   742 F. App'x 810 (5th Cir. 2018) ......................................................18

*Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*
   6 F.3d 350 (5th Cir. 1993) ..................................................................8

PD.53427013.1

*Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*
 277 F.2d 919 (5th Cir. 1960) .................................................................15

*In re Dierschke*
 975 F.2d 181 (5th Cir. 1992) .................................................................14

*In re OCA, Inc.*
 551 F.3d 359 (5th Cir. 2008) .................................................................14

*Jenkens & Gilchrist v. Groia & Co.*
 542 F.3d 114 (5th Cir. 2008) ......................................................... 8 & 14

*Lacy v. Sitel Corp.*
 227 F.3d 290 (5th Cir. 2000) ........................................................15 & 16

*Osborn v. Belton*
 131 F.4th 262 (5th Cir. 2025) ...................................................................1

*Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*
 804 F.2d 311 (5th Cir. 1986) ...................................................................8

*Rogers v. Hartford Life & Accident Ins. Co.*
 167 F.3d 933 (5th Cir. 1999) .................................................................14

*Scott v. Carpanzano*
 556 F. App'x 288 (5th Cir. 2014) .........................................................13

*Sec. & Exch. Comm'n v. Novinger*
 40 F.4th 297 (5th Cir. 2022) ............................................8, 10, 12, 19

*Seven Elves v. Eskenazi*
 635 F.2d 396 (5th Cir. 1981) ...........................................................9 & 14

*Texas v. Alabama-Coushatta Tribe of Tex.*
 918 F.3d 440 (5th Cir. 2019) .................................................................19

**Other Cases**

*Barrier v. Beaver*
 712 F.2d 231 (7th Cir. 1983) ...................................................................8

*Berthelsen v. Kane*
 907 F.2d 617 (6th Cir. 1990) .................................................................15

vi

*Brown v. United States*
Civil No. 3:17-cv-551, 2019 WL 6330645 (S.D. Miss. 2019)..........................20

*Carter v. C&S Canopy, Inc.*
381 So. 3d 399 (Miss. Ct. App. 2024)................................................................18

*Estate of Klaus ex rel. Klaus v. Vicksburg Healthcare, LLC*
972 So. 2d 555 (Miss. 2007)..............................................................................20

*Guess v. Companion Life Ins. Co.*
Civil Action No. 19-12289, 2020 WL 2495496 (E.D. La. 2020).......................15

*Nat'l Disc. Corp. v. O'Mell*
194 F.2d 452 (6th Cir. 1952) .............................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 54 ........................................................................18

Federal Rule of Civil Procedure 60 ...............................................................*passim*

28 U.S.C. § 1291 .....................................................................................................1

Mississippi Code § 1-3-33 .....................................................................................20

Mississippi Code § 11-1-60 .....................................................................................5

Mississippi Code § 63-3-903 .......................................................................18 & 19

California Corporations Code § 1702..............................................................4 & 11

11 Wright & Miller's Federal Practice & Procedure § 2851.............................8 & 9

PD.53427013.1

## JURISDICTIONAL STATEMENT

This Court has jurisdiction as this appeal is from an order denying a Rule 60(b) motion which is an appealable final judgment under 28 U.S.C. § 1291. *See Osborne v. Belton*, 131 F.4th 262, 269 (5th Cir. 2025).

PD.53427013.1

## STATEMENT OF THE ISSUES

1. Rule 60(b)(4) provides relief from a judgment if the judgment is void. A judgment is void if the Court lacks jurisdiction or violates due process. Due process requires notice and an opportunity to be heard, which generally includes, at minimum, service of the lawsuit at issue. Here, where Chambers and Roberts never served KJ Win, was the District Court's default judgment against KJ Win void under Rule 60(b)(4)?

2. Rule 60(b)(1) provides relief from judgment for excusable neglect based on a factor test which balances finality and ensuring that justice is done. Here, Roberts and Chambers secured a nearly $3 million default judgment against KJ Win despite (1) the complaint acknowledging that KJ Win was not involved in their accident; (2) their awarded damages exceeding damages caps, and (3) never serving KJ Win. Was denial of Rule 60(b)(1) relief an abuse of discretion?

2

**STATEMENT OF THE CASE**

On October 10, 2023, Cheryl Roberts and William Chambers sued KJ Win, Inc. ROA 6. The lawsuit initially appears unremarkable; Roberts and Chambers are plaintiffs who claim they were injured in an accident on an interstate, and KJ Win is a trucking company. But take a closer look at the allegations, and the suit takes on a strange look.

Roberts and Chambers allege they were driving on Interstate 20 in Mississippi when they were involved in a seven-car accident. A tractor-trailer allegedly quickly switched lanes, which caused a pickup truck to brake. ROA 9. The Nissan Murano following the pickup also slowed down, as did the Toyota Tacoma following the Murano. ROA 9. Chambers and Roberts—immediately behind the Tacoma—also tried to slow down. ROA 9. Unfortunately for them, the tractor-trailer immediately behind them—driven by a man named Tommy Wilcher—rear-ended them. ROA 9.

That caused a cascade of rear-endings, flowing from Chambers and Roberts through to the pickup at the front of the line. ROA 9. Notably, the tractor-trailer that quickly switched lanes was unharmed and apparently drove off without further incident. ROA 9.

A close reader may notice that KJ Win is not mentioned in any of these facts. That is because KJ Win did not have a truck driving on the interstate when the accident occurred. KJ Win's only alleged involvement is that one of its drivers had

3

parked a disabled tractor-trailer off the side of Interstate 20 earlier in the day. ROA 16. Despite this, KJ Win was the only defendant named in the suit. ROA 6. Instead of suing any of the other drivers or companies actually involved in the accident—entities and individuals specifically identified in the complaint and the crash report attached to the complaint—Roberts and Chambers targeted KJ Win for all of the damages they allegedly sustained.

What followed filing of the suit were several attempts by Chambers and Roberts to serve their suit. ROA 54-55. After being unable to locate KJ Win or its registered agent, they moved the District Court to allow them to attempt service under the California Corporations Code. ROA 54-56. Specifically, they presented California Corporations Code § 1702(a). This section provides that, after a proper order, service can be effected by hand delivery to the California Secretary of State of "one copy of the process for each defendant to be served, together with a copy of the order authorizing such service." CAL. CORP. CODE § 1702(a).

The District Court agreed, and on December 15, 2023, ordered that Roberts and Chambers could serve KJ Win "by hand delivering a copy of the summons, the complaint, and this Order to the California Secretary of State." ROA 79. Roughly a month later, Roberts and Chambers moved for entry of default. ROA 82-83. Along with that motion, Chambers and Roberts filed an affidavit asserting that they only hand-delivered a "copy of the summons and Complaint[.]" ROA 85. The clerk

4

entered default a day later, ROA 87, and Roberts and Chambers promptly moved for a default judgment. ROA 88-89. Again, they attached an affidavit affirming that they only hand-delivered a "copy of the summons and Complaint[.]" ROA 91.

Despite Roberts and Chambers not complying with the District Court's order—or California law—the District Court entered an order granting default judgment. ROA 95-107. The District Court found that Chambers and Roberts had pled sufficient facts to hold KJ Win liable for their injuries and proceeded to calculate their damages. ROA 98-99. The District Court awarded Roberts and Chambers all of their medical expenses, including life care plans that the District Court received in evidence at the default judgment hearing. ROA 384-85. The District Court then awarded $2,000,000.00 in non-economic damages in contravention of Mississippi's $1,000,000.00 non-economic damages cap found in Mississippi Code § 11-1-60. In total, the District Court awarded $2,839,806.73 in damages. ROA 107. All such damages were apportioned to KJ Win alone, and the District Court did not reference any of the other individuals or entities that Chambers and Roberts identified in the suit. ROA 100-01, 103

Upon learning of the lawsuit and default judgment, KJ Win moved the District Court to set the judgment aside under Rule 60(b). ROA 109-10. After briefing, the District Court denied the motion. ROA 350-59. It specifically found that KJ Win

5

was in willful default and so declined to address any of the defenses that KJ Win had

to the suit, or the default judgment itself.  ROA 357-58.  KJ Win timely appealed.

PD.53427013.1

## SUMMARY OF THE ARGUMENT

KJ Win appeals the denial of its Federal Rule of Civil Procedure 60(b) motion. The motion sought to set aside a $2,839,806.73 default judgment. The District Court rejected KJ Win's motion, but there are at least two bases to reverse.

First, the District Court's judgment was void under Rule 60(b)(4). Judgments are void under Rule 60(b)(4) if the court lacked jurisdiction or the judgment violated due process. Here, Chambers and Roberts never served KJ Win. As a result, the District Court lacked personal jurisdiction. Additionally, the judgment violated due process because KJ Win never received notice and an opportunity to be heard.

Second, KJ Win should be granted relief under Rule 60(b)(1) for excusable neglect. There are a bevy of factors that enter into this analysis, but the goal of the analysis is to establish a balance between finality and justice. These factors weigh in favor of KJ Win because it was never served. But, alternatively, there are also equitable issues with the judgment. For instance, it assesses 100% liability to KJ Win even though the allegations of the complaint establish that KJ Win was not involved in the accident that injured Roberts and Chambers—unlike the other vehicles Roberts and Chambers identify in their complaint. Additionally, KJ Win has legitimate affirmative defenses. Finally, the judgment exceeds Mississippi's damages caps. Equity and justice weigh in KJ Win's favor.

7

## ARGUMENT

Default judgments are by their nature drastic remedies.  *See Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 120 n.4 (5th Cir. 2008).  They are even more drastic when—as here—the defendant was never served.

KJ Win appeals the denial of its motion which was made under both Federal Rules of Civil Procedure 60(b)(4) and 60(b)(1).  As a result, two standards of review apply.  This Court applies a *de novo* standard of review to a district court's denial of arguments raised under Rule 60(b)(4).  *Sec. & Exch. Comm'n v. Novinger*, 40 F.4th 297, 301 (5th Cir. 2022) (citing *Callon Petroleum Co. v. Frontier Ins. Co.*, 351 F.3d 204, 208 (5th Cir. 2003)).  However, an abuse of discretion standard applies to arguments raised under all other parts of Rule 60(b).  *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998) (quoting *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 313-14 (5th Cir. 1986)).

Rule 60(b) is drawn from the long equitable tradition surrounding the federal courts.  *See Barrier v. Beaver*, 712 F.2d 231, 234 (7th Cir. 1983) (quoting 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2851).  Its purpose is to provide equitable relief, and as such, there are a number of factors which "shape the framework of the court's consideration of a 60(b) motion[.]" *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 356 (5th Cir. 1993).  These include:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that

8

the rule should be liberally construed in order to do substantial justice; (4) whether the motion was made within a reasonable time; (5) whether—if the judgement was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.

*Id.* (quoting *Seven Elves v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981)).

These factors are not exhaustive, and over the years this Court has added additional factors—as well as glosses—to guide district courts' evaluation of these motions. What has remained constant though is that Rule 60(b) is an exercise of a federal court's equitable powers. As the Supreme Court said earlier this year, "[t]he general 'purpose' of the Rule . . . is 'to make an exception to finality.' The Rule 'attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done.'" *Waetzig v. Halliburton Energy Servs., Inc.*, 604 U.S. 305, 308-09 (2025) (internal citations omitted) (first quoting *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005); and then quoting 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2851(3d ed. 2012)).

The problem in this case is that this litigation was brought to an end before it even started. Not only did Chambers and Roberts not serve their suit, but KJ Win is now responsible for *__all__* of the injuries that they allegedly suffered after being rear-ended by an tractor trailer—even though KJ Win's vehicle was disabled, parked off

9

the side of an interstate, and never made contact with any of the ***seven*** vehicles involved in the accident. The decision to restrict equity here—and the concomitant refusal to consider the facts undergirding this case—should be rectified.

## I.   The District Court lacked jurisdiction and its judgment was premised on a violation of due process that deprived KJ Win of notice and the opportunity to be heard.

To begin, the District Court's judgment was void. Rule 60(b)(4) houses the mechanism for relief from void judgments. FED. R. CIV. P. 60(b)(4). And as this Court has observed, a "void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *Novinger*, 40 F.4th at 302 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)). The only two actionable infirmities that this Court has recognized are a lack of jurisdiction or a due process violation. *Id.* As noted above, both apply here.

### A. The District Court did not have personal jurisdiction.

Relief is appropriate under Rule 60(b)(4) "if the initial court lacked subject matter or personal jurisdiction." *Callon Petroleum*, 351 F.3d at 208. And, to "exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

The rub here is that Chambers and Roberts never served their lawsuit.

10

Chambers and Roberts attempted to serve process through an order by the District Court. Chambers and Roberts represented to the District Court that they had attempted to serve KJ Win unsuccessfully and needed to resort to service under California Corporations Code § 1702(d). ROA 55-56. This section provides that when other forms of attempted service have failed, a court can issue an order that service can be made "by delivering by hand to the Secretary of State . . . one copy of the process for each defendant to be served, together with a copy of the order authorizing such service." CAL. CORP. CODE § 1702(a). The District Court then entered an order allowing Chambers and Roberts to serve process "by hand delivering a copy of the summons, the complaint, and this Order to the California Secretary of State[.]" ROA 79.

But Chambers and Roberts never did this. The District Court's order required hand delivery of three things: "a copy of the summons, the complaint, and this Order[.]" ROA 79. All three items are also required to effect service under California Corporations Code § 1702(a), which the District Court authorized service under. ROA 79. However, the proof of service that Chambers and Roberts filed with the District Court only shows that the summons was served. ROA 81. Additionally, the affidavit filed by counsel for Chambers and Roberts with the motion for default confirms that only "a copy of the summons and Complaint" were served on the California Secretary of State, not the order. ROA 85. This was

11

reiterated in the affidavit attached to the motion for default judgment. ROA 91. Contrary to their assertions then, Chambers and Roberts have not served their lawsuit.

With no service, there was no personal jurisdiction, and the District Court's judgment was void.

### B. KJ Win's lack of service also violated due process.

As with all due process issues, the question is whether the movant was deprived "of notice or the opportunity to be heard." *Novinger*, 40 F.4th at 304 (quoting *Espinosa*, 559 U.S. at 271). More specifically, "[d]ue process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

There is a difference between due process and actual notice. As above, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane*, 339 U.S. at 314). And while due process and service of process are not identical, *see Espinosa*, 559 U.S. at 272, service of process is a paradigmatic form of providing that notice and opportunity to be heard. *See Novinger*, 40 F.4th

12

at 304. Additionally, the only evidence in this suit of any communication between Chambers and Roberts and KJ Win is their attempts to serve the lawsuit on it.

To be sure, this Court has previously emphasized that "serious procedural irregularities during the course of a proceeding, without more, do not amount to a deprivation of due process." *Scott v. Carpanzano*, 556 F. App'x 288, 292 (5th Cir. 2014). But none of those situations are like the one here where: (1) the complaint was never served; and (2) there is no evidence that the defendant had actual knowledge of the suit. *See, e.g., Callon Petroleum*, 351 F.3d at 210 ("due process in civil cases usually requires only proper notice and service of process and a court of competent jurisdiction.").[1]

As the District Court recounted, Chambers and Roberts allegedly contacted several individuals in their attempt to serve their lawsuit, but none of them had any contact information for KJ Win or had no idea what KJ Win was. ROA 351. With no service of process, and no actual notice, there is no basis for finding that Chambers, Williams, and the District Court have met the strictures of due process, and the judgment was void from the outset.[2] This Court must grant KJ Win relief under Rule 60(b).

---

[1] Indeed, the entire basis of the District Court's refusal to grant Rule 60 relief was that "KJ Win never appeared[.]" ROA 355.

[2] Additionally, with no service of process, there is no basis for a default judgment.

**II.    The District Court's decision to find KJ Win willfully defaulted—and so ignore every meritorious defense KJ Win had—was an unfortunate abuse of discretion.**

But, even if the District Court's judgment was not void, it was still an abuse of discretion under Rule 60(b)(1). "The 60(b)(1) analysis consists of at least three factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Jenkens & Gilchrist*, 542 F.3d at 119 (quoting *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)). These factors—in addition to the *Seven Elves* factors—and others like them, are "regarded simply as a means of identifying circumstances which warrant the finding of 'good cause.'" *Id.*

**A. KJ Win is not in default, let alone willful default.**

First, KJ Win's default was not willful. As this Court has said "[u]ntil the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999) (citing *Broad. Music, Inc. v. M.T.S. Ent., Inc.*, 811 F.2d 278, 282 (5th Cir. 1987)). As outlined above KJ Win was never served with the lawsuit, therefore it could not have defaulted. Additionally, because willful default "is an 'intentional failure' to respond to litigation[,]" *In re OCA, Inc.*, 551 F.3d 359, 371 n.32 (5th Cir. 2008), KJ Win also could not have intentionally defaulted.

14

Alternatively, even assuming Chambers and Roberts effected service, the District Court found that KJ Win willfully defaulted based on one fact: KJ Win allegedly did not keep its address updated with the California Secretary of State. ROA 358. But the "inability to maintain its proper address" with the California Secretary of State is not intentional or willful. *See Guess v. Companion Life Ins. Co.*, Civil Action No. 19-12289, 2020 WL 2495496, at *3 (E.D. La. May 14, 2020); *Blois v. Friday*, 612 F.2d 938, 940-41 (5th Cir. 1980) (finding that an attorney's failure to update its address with the court was excusable neglect under Rule 60(b)(1)). Quite simply, the District Court did not identify any "intentional failure" on KJ Win's part to support its finding. Therefore, its judgment should be reversed.

### B. The only prejudice that Chambers and Roberts have identified is that they have been unable to locate the manager/members of KJ Win.

Second, granting Rule 60(b) relief would not prejudice Chambers and Roberts. "There is no prejudice to the plaintiff where 'the setting aside of the default has done no harm to plaintiff except to require it to prove its case." *Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000) (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)). Therefore, "delay does not alone constitute prejudice. Rather, 'the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th

15

Cir. 1990)). The only prejudice that Chambers and Roberts have identified is that KJ Win has been difficult to serve. ROA 270-71. That does not align with any of the concerns listed in *Lacy*.

### C. KJ Win has a number of meritorious defenses.

Third, KJ Win has a plethora of meritorious defenses. To begin, there is the aforementioned service of process issue. But, turn to the allegations in the complaint, and none of them support a finding of liability against KJ Win, much less 100% of the liability as determined by the District Court.

The first relevant allegation is that, on or about December 29, 2021, KJ Win transported a load through Newton County, Mississippi. ROA 8. The next set of relevant factual allegations are contained in paragraph 18 of the complaint. ROA 9. These can be summarized as:

- Roberts and Chambers were driving on Interstate 20 on December 29, 2021.

- An unknown driver of a KJ Win-owned tractor trailer parked it on the shoulder of Interstate 20.

- An unknown tractor trailer—a nonparty to this suit—changed lanes, allegedly due to the tractor trailer parked on the shoulder of Interstate 20.

- David Williams—a nonparty to the suit—slowed his pickup truck to avoid the unknown tractor trailer which was switching lanes. Then every car following Williams braked.

- Tommy Wilcher—also a nonparty to the suit—was unable to slow his tractor trailer and rear-ended Roberts and Chambers.

16

- Roberts and Chambers then rear-ended Christopher Massey—also a nonparty to the suit.

- Christopher Massey then rear-ended Tonya Underwood—also a nonparty to the suit.

- Tonya Underwood then rear-ended David Williams.

ROA 9. Roberts and Chambers also included bare legal allegations that "KJ Win provides inadequate training[,]" "does not adequately instruct," "has inadequate policies for supervision," and "has no documentation of John Doe 1's sleep schedule, post-wreck testing, or historical inspections/maintenance[.]" ROA 8-9. Those are the extent of the facts alleged in this complaint.

The problem with these bare allegations is that, even if the facts were proven, there would be no basis for liability against KJ Win. Robert and Chambers brought negligence and negligence per se claims against the John Doe driver of KJ Win's stopped tractor trailer parked on the shoulder, negligent hiring and supervision claims against KJ Win, violations of various federal regulations by KJ Win related to hiring the John Doe driver, and respondeat superior claims against KJ Win related to the John Doe driver's actions. There are no facts alleged that would support any of these causes of action whether they were proven or not.

In other words, even if every single factual allegation in the complaint is true, no reasonable juror could ever find that KJ Win was 100% at fault for Chambers's and Roberts's alleged injuries. Despite this, the District Court exceeded the scope

of relief pled and determined that KJ Win was 100% at fault even though the allegations themselves do not justify such a judgment.  As this Court observed in 2018, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 812 (5th Cir. 2018) (quoting FED. R. CIV. P. 54(c)).  Further, this Court observed that the distinction between default judgments and other judgments "has a long lineage, as it 'was well settled even before the adoption of the Rules of Civil Procedure that in rendering a default judgment the Court can only give to the plaintiff such relief as was proper upon the face of the bill.'"  *Id.* at 813 (quoting *Nat'l Disc. Corp. v. O'Mell*, 194 F.2d 452, 456 (6th Cir. 1952)).

Beyond these realities though, KJ Win has affirmative defenses.  For instance, Mississippi Code § 63-3-903 specifically allows for stopping a vehicle off of a highway.  *See Carter v. C&S Canopy, Inc.*, 381 So. 3d 399, 406 (Miss. Ct. App. 2024) ("[i]f there is proper excuse or necessity for stopping the car, it will be sufficient, if a reasonable effort be made to get it entirely off the main traveled portion of the road, or as nearly so as the circumstances will permit.").  The photographs attached to the complaint establish that KJ Win complied with Mississippi law.  *See* ROA 16-17.

Further, KJ Win was not actually involved in the accident that allegedly injured Roberts and Chambers.  As the allegations in the complaint show, all of the

18

damages that Roberts and Chambers suffered were caused by their collision with other vehicles. And, even if KJ Win's vehicle was not properly parked under Mississippi Code § 63-3-903, the ultimate causes of the accident were the alleged decision to suddenly switch lanes by the unknown tractor trailer and the failure of yet another tractor trailer to stop before rear-ending Chambers and Roberts. All of these facts are alleged in the complaint or otherwise clear from the photographs and crash report attached to the complaint.

### D. The District Court's decision to ignore these factors was an abuse of discretion.

Judgments under Rule 60(b)(1) are reviewed for abuse of discretion. And, under the first prong of this review, judgments should be reversed if they rested on "clearly erroneous factual findings[,]" "erroneous conclusions of law[,]" or misapplied "the law to the facts." *Novinger*, 40 F.4th at 302 (quoting *Texas v. Alabama-Coushatta Tribe of Tex.*, 918 F.3d 440, 446-47 (5th Cir. 2019)).

As laid out above, the District Court was clearly wrong when it concluded—based on Roberts's and Chambers's affidavits—that Roberts and Chambers had served the complaint. Additionally, it made a legal error when it held that KJ Win's failure to answer amounted to willful default. And, because of these threshold conclusions, the District Court never considered the other two elements of the Rule 60(b)(1) standard.

19

Furthermore, the District Court made a legal error when it assessed $2 million in non-economic damages.

Mississippi Code § 11-1-60 provides that "[i]n any civil action filed on or after September 1, 2004, other than those actions described in paragraph (a) of this subsection [for malpractice], in the event the trier of fact finds the defendant liable, they shall not award the plaintiff more than One Million Dollars ($1,000,000.00) for noneconomic damages."  In 2007, the Supreme Court of Mississippi considered the statute and held that the plain language limited the ***total*** amount of non-economic damages available to plaintiffs in any suit.  *Estate of Klaus ex rel. Klaus v. Vicksburg Healthcare, LLC*, 972 So. 2d 555, 558 (Miss. 2007).  The Court specifically rejected the notion that the caps put in place by Mississippi Code § 11-1-60 apply to each plaintiff individually, finding that Mississippi law specifies that words used in statutes which are "in the singular number only . . . shall extend to and embrace the plural[.]" *Id.* (quoting MISS. CODE ANN. § 1-3-33).  *See also Brown v. United States*, Civil Action No. 3:17-cv-551, 2019 WL 6330645, at *11 (S.D. Miss. Nov. 26, 2019) (finding that non-economic damages cap applies collectively, not individually).

Therefore, even assuming that Chambers and Roberts were both *individually* entitled to $1,000,000.00 in non-economic damages, the most they could *collectively* receive under Mississippi law is $1,000,000.00.  Thus, the District Court also abused its discretion on this basis.

For these reasons, the judgment should be reversed, and KJ Win's requested Rule 60(b) relief granted.

PD.53427013.1

## CONCLUSION

Because KJ Win was entitled to relief from the default judgment entered by the District Court, this Court should reverse the denial of KJ Win's Rule 60(b) motion and vacate the default judgment.

Respectfully submitted,

*/s/ Scott Ellzey*

Scott Ellzey, MS Bar No. 10435
Drury S. Holland, MS Bar No. 104371
John P. McMackin, MS Bar No. 105967
PHELPS DUNBAR LLP
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: (228) 679-1130
Facsimile: (228) 679-1131
Email: scott.ellzey@phelps.com
Email: dru.holland@phelps.com
Email: john.mcmackin@phelps.com

22

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was filed on this the 15th day of September, 2025, with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*/s/ Scott Ellzey*
Attorney for Appellant

PD.53427013.1

## CERTIFICATE OF COMPLIANCE

1.   This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, this document contains no more than 5700 words.

2.   This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and Fifth Circuit Rule 32.1 and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface, including serifs, using Word in Time New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,


BY:   _/s/ Scott Ellzey_
Attorney for Appellant


Dated:  9/15/2025

24